IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Thomas Edward Zegray, | ) | C/A No.: 1:12-64-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Richard M. Gergel's February 23, 2012, order referring this matter for disposition. [Entry #11]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the court affirms the Commissioner's decision.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.     Relevant Background

A.     Procedural History

On February 3, 2009, Plaintiff filed an application for DIB in which he alleged his disability began on November 30, 2008.  Tr. at 146, 148.  His application was denied initially and upon reconsideration.  Tr. at 60, 61.  On March 8, 2011, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 25–46 (Hr'g Tr.).  The ALJ issued an unfavorable decision on April 28, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 11–18.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on January 5, 2012.  [Entry #1].

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was 52 years old at the time of the hearing.  Tr. at 30.  He completed two years of college.  *Id.*  His past relevant work ("PRW") was as a computer operations supervisor and restaurant manager.  Tr. at 44.  He alleges he has been unable to work since November 30, 2008.  Tr. at 146.

2.     Medical History

a.     Records Prior to Plaintiff's Date Last Insured

In December 2007, Plaintiff was seen at Med Plus South Strand Family Practice. Tr. at 288.  He was noted to be in no acute distress, and a review of his respiratory and

cardiac systems was normal. *Id.* When he returned in May 2008, his examination yielded similar results. Tr. at 292.

In April 2009, Plaintiff underwent a consultative physical examination performed by Dora L. Anguelova, M.D., in connection with his application for disability benefits. Tr. at 295–99. He reported that he was born with a collapsed lung, suffered from asthma since childhood, and had an enlarged heart and severe hearing loss. Tr. at 295–96. On examination, he was in no respiratory distress, but exhibited very diminished breath sounds bilaterally. Tr. at 297. He had difficulty with over-the-shoulder activities mainly because of his breathing difficulty. Tr. at 298. Dr. Anguelova noted that Plaintiff was tearful at times and displayed some depressed affect. *Id.* She opined that he suffered from poorly-controlled asthma and hypertension and recommended a chest x-ray to evaluate Plaintiff's heart enlargement and a two-dimensional echocardiogram to assess any right-sided pulmonary hypertension. *Id.* She further opined that Plaintiff would not be able to use his arms at the level of his shoulders or to do any above-shoulder activity and that he would not be fit for heavy exertional activity. Tr. at 299.

A Report of Contact dated May 5, 2009, indicates that Plaintiff reported that he had never been in counseling and was not taking any medication for stress. Tr. at 230. He further reported that he had never sought medication for his nerves or stress and that his stress level decreased dramatically after closing his restaurant. *Id.* In a follow-up report a few weeks later, Plaintiff denied any mental problems other than anger and frustration with the Social Security Administration ("SSA") because of the time it was taking to process his claim. *Id.*

In June 2009, Plaintiff underwent respiratory testing at Waccamaw Community Hospital. Tr. at 300–09. This testing showed that he had moderate obstructive airway disease. Tr. at 301.

On June 15, 2009, Jim Liao, M.D., a state-agency medical consultant, reviewed the evidence of record and opined that Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of medium work. Tr. at 313–20. Dr. Liao further opined that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. Tr. at 317.

On July 16, 2009, Plaintiff electronically submitted a disability report to SSA in which he claimed he began having panic attacks and deep bouts of depression on May 1, 2009. Tr. at 239. He also reported an increase in his asthma attacks and insufficient funds to purchase his blood pressure medication. *Id.*

In a function report dated December 12, 2009, Plaintiff reported that he spent most of his waking hours using the internet, watching television, and listing to music. Tr. at 245. He stated that he was able to prepare his own meals and take his dog for short walks daily. Tr. at 246, 248. He indicated that he did not have any problems with personal care and could drive, shop, and handle his own finances. Tr. at 246, 249. He stated that he paid someone to mow his lawn. Tr. at 248. He reported golfing once a week and going to the Moose Club or VFW everyday to drink. Tr. at 250. He claimed to have hearing loss from working in computer rooms. Tr. at 251. He noted that he was good with written instructions, but tended to forget or not pay attention to spoken instructions. *Id.*

In a Report of Contact dated December 21, 2009, Plaintiff stated that he had had asthma for long enough to know how to control it himself. Tr. at 269. He reported a positive response to his asthma medications and stated that he felt his asthma was stable. *Id.* He stated that he had not been taking his blood pressure medications, but denied any symptoms associated with that condition. *Id.*

In January 2010, Plaintiff underwent a consultative mental status examination performed by Jonathan Simons, Ph.D. Tr. at 321–24. Dr. Simons noted that Plaintiff reported a life-long history of emotional problems, but no history of psychiatric hospitalizations, outpatient treatment, or medications. Tr. at 321. The doctor observed Plaintiff to have a frustrated and angry mood, no memory problems, poor judgment, and above-average intellectual functioning. Tr. at 321–22. Dr. Simons opined that Plaintiff's depression seemed to affect his persistence and pace to a mild extent and that, if Plaintiff were working, he would probably not be more than mildly depressed. Tr. at 322. He diagnosed Plaintiff with recurrent, mild-to-moderate major depression, alcohol and cannabis abuse/dependence, and panic disorder without agoraphobia. Tr. at 323.

In a Report of Contact dated February 19, 2010, Plaintiff stated that he went to the bar everyday to drink a half pitcher of beer and two or three shots. Tr. at 257. He said he would go home and "get completely smashed" before the police came out. *Id.* He stated that he had been smoking marijuana since he was nine years old and was "not going to stop for nobody." *Id.* He reported smoking 6–7 joints per day. *Id.* He stated that he had never done any time or gotten into legal trouble for his alcohol or drug use, noting on both accounts that "he's too smart for that." *Id.*

In March 2010, Michael Neboschick, Ph.D., a state-agency psychological consultant, reviewed the evidence of record and concluded that Plaintiff had no severe psychological impairment. Tr. at 325–38. Dr. Neboschick specifically indicated that he had considered listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). Tr. at 325. He found that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. Tr. at 335.

Plaintiff was seen at the Smith Medical Clinic from October through December 2010. Tr. at 343–45, 49–59. His major medical problems were described as hypertension, asthma, chronic obstructive pulmonary disease ("COPD"), depression, and allergies. Tr. at 344. He was noted to be depressed, not taking his medications as prescribed, and frustrated with the disability process. Tr. at 350.

In December 2010, Charlotte Moore, P.A.C., completed a medical statement regarding heart failure related to Plaintiff's claim for disability benefits. Tr. at 360–61. She noted that Plaintiff "readily admits noncompliance with medications that would improve his activity level" and stated that there were no records regarding his claims of heart problems. Tr. at 361.

### b.     Records After Plaintiff's Date Last Insured

The physicians at Smith Medical Clinic referred Plaintiff to Jean Cross, M.S.W., L.I.S.W., for mental health care. Tr. at 346–48, 363. In February 2011, Ms. Cross provided a written summary of treatment notes from the five visits she had with Plaintiff since January 2011, at the request of Plaintiff's legal representative. Tr. at 362–64. She

6

indicated that Plaintiff claimed to tire easily and said that even sitting at a desk caused extreme fatigue. Tr. at 363. Ms. Cross noted that Plaintiff had a difficult time finding possible positive outcomes for his future. Tr. at 364. She said Plaintiff was taking his medication as prescribed and would continue with weekly appointments. *Id.*

      C.      The Administrative Proceedings

             1.      The Administrative Hearing

                   a.      Plaintiff's Testimony

At the hearing on March 8, 2011, Plaintiff testified that he worked in the Middlesex County College data center from 1977 to 2005. Tr. at 30. He said that he almost had a nervous breakdown caused by job stress in 2005 and, "like an idiot," quit his job and bought a restaurant. Tr. at 36. He stated that from 2005 to 2008, he owned a breakfast/lunch restaurant. Tr. at 31. He said the restaurant went "belly-up" in November 2008 and that his health was so horrible that he could not operate it anymore. Tr. at 31–32. He testified that he lost his house and ended up living up with a guy who turned out to be a cokehead and psychopath and who beat him up. Tr. at 38. Plaintiff stated that he was beaten as a child and had been a recluse and a loner all of his life. Tr. at 39. He said that he began smoking marijuana when he was nine years old and still did every once in awhile. Tr. at 40. He stated that he drank a pitcher of beer and a shot at the American Legion/VFW pretty much everyday as a way to get out of the house. Tr. at 40–41. When the ALJ asked him how he afforded alcohol, he responded that he did petty things to help his friends at the American Legion/VFW like help with their computers. Tr. at 41.

7

Plaintiff testified that he is unable to work because he does not have any breath. Tr. at 33. He described several bad experiences with and a lack of respect for doctors. Tr. at 33, 36. He stated that he did not take his blood pressure medication for several years in the hopes that he would die. Tr. at 34. He said that he tried to kill himself after his restaurant closed, but could not do it because he loved his two dogs. *Id.* He stated that one of his doctors told him that he would not likely live past the age of 60 and that scares him. Tr. at 37. Near the close of his testimony, Plaintiff stated that his car was being repossessed and that he did not have a choice and would "have to commit suicide." Tr. at 41. He said he has no contact with his family because they got mad at him when he moved. Tr. at 43.

### b.    Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown reviewed the record and testified at the hearing. Tr. at 43–45. The VE categorized Plaintiff's PRW as a computer operations supervisor and as a restaurant lunchroom manager as skilled, light work. Tr. at 44. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work, but must avoid dust, fumes, chemicals, noxious odors, and poor ventilation. *Id.* The VE testified that the hypothetical individual could perform Plaintiff's PRW as a computer operations supervisor. Tr. at 45. Upon further questioning by the ALJ, the VE stated that if the hypothetical person also suffered from major depression that affected his ability to concentrate and maintain persistence and pace resulting in him being frequently off-task, he would be unable to maintain competitive employment.

2.      The ALJ's Findings

In her April 28, 2011, decision, the ALJ made the following findings of fact and

conclusions of law:

1.      The claimant last met the insured status requirements of the Social Security
        Act on December 31, 2010.
2.      The claimant did not engage in substantial gainful activity during the period
        from his alleged onset date of November 30, 2008 through his date last
        insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).
3.      Through the date last insured, the claimant had the following severe
        impairments: asthma/chronic obstructive pulmonary disease. (20 CFR
        404.1520(c)).
4.      Through the date last insured, the claimant did not have an impairment or
        combination of impairments that met or medically equaled one of the listed
        impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
        404.1520(d), 404.1525, and 404.1526).
5.      After careful consideration of the entire record, the undersigned finds that,
        through the date last insured, the claimant had the residual functional
        capacity to perform medium work as defined in 20 CFR 404.1567(c).
        Specifically, the claimant was able to lift and carry up to 50 pounds
        occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours
        in an 8-hour day except that the claimant must avoid concentrated exposure
        to dust, fumes, chemicals, noxious odors, and poor ventilation.
6.      Through the date last insured, the claimant was capable of performing past
        relevant work as a computer operator supervisor.  This work did not require
        the performance of work-related activities precluded by the claimant's
        residual functional capacity (20 CFR 404.1565).
7.      The claimant was not under a disability, as defined in the Social Security
        Act, at any time from November 30, 2008, the alleged onset date, through
        December 31, 2010, the date last insured (20 CFR 404.1520(f)).

Tr. at 11–18.

D.      Appeals Council Review

Plaintiff submitted additional evidence to the Appeals Council.  On April 17,

2011, Plaintiff was admitted to Grand Strand Regional Medical Center ("GSRMC") at

9:41 p.m. after being stabbed with a knife while on the street.  Tr. at 368.  On April 19,

2011, James Reid, M.D., evaluated Plaintiff for COPD.  Tr. at 372.  On examination, Dr.

Reid observed good air movement in Plaintiff's chest as well as bilateral ronchi at the bases. Tr. at 373. He noted that a chest x-ray showed only atelectasis and a chest CT showed no pneumothorax or pneumomediastinum, but also moderate atelectasis in his lower lungs bilaterally with a possible infiltrate developing. Tr. at 372. He recommended that Plaintiff undergo a full pulmonary function test and a sleep study. *Id.*

Plaintiff was treated at Waccamaw Center for Mental Health from May 3, 2011, to August 8, 2011. Tr. at 405–21. He repeatedly demonstrated a negative outlook on life. Tr. at 406–08, 411–12, 420–21. In June 2011, Plaintiff reported some confusion such as remembering to turn the car lights on (Tr. at 409), and a treating physician suspected that his confusion may have been related to his blood pressure medications. Tr. at 410. The doctor advised him to stay out of the heat and drink plenty of water. *Id.*

Plaintiff saw psychiatrist Dr. Kathleen O'Leary on June 28, 2011. Tr. at 414. Dr. O'Leary noted that Plaintiff was working "enough to get by" by selling "chances" at a golf course and by selling mall space. *Id.* He stated that he was not sending out resumes or actively looking for a job because he was not willing to relocate. *Id.* He reported sleeping well at night and staying in bed only if he had nothing to do. *Id.*

On July 13, 2011, his counselor reminded him of the doctor's concerns about him working so much out in the heat with the medications he was taking. Tr. at 420. Plaintiff responded that he "does not know what other jobs he could have and does not want to further delay getting disability by working a more steady job." *Id.*

## II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    The ALJ conducted an improper listing analysis;

2)    The ALJ failed to evaluate the combined effect of Plaintiff's impairments;[2]

3)    The ALJ performed an improper credibility analysis; and

4)    The ALJ improperly evaluated opinion evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that

---

[2] Although Plaintiff states his first two allegations of error separately, the court finds that they are related and addresses them together.

impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

---

[3]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4]  In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is

supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.      Analysis

        1.      The ALJ Performed a Proper Listing Analysis and Adequately Evaluated Plaintiff's Combined Impairments

At step three of the sequential evaluation, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the impairments listed in the regulations and is therefore presumptively disabled.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added).  It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment.  20 C.F.R. §§ 404.1525(d), 416.925(d).  The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.  20 C.F.R. §§ 404.1508, 416.908.  The Commissioner can also determine that the claimant's impairments are medically

equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing.  20 C.F.R. §§ 404.1526(a), 416.926(a).  There are three ways to establish medical equivalence: (1) if the claimant has an impairment found in the Listings, but does not exhibit one or more of the findings specified in the particular Listing or one of the findings is not as severe as specified in the particular Listing, then equivalence will be found if the claimant has "other findings related to [that] impairment that are at least of equal medical significance to the required criteria"; (2) if the claimant has an impairment not described in the Listings, but the findings related to the impairment are at least of equal medical significance to those of a particular Listing; or (3) if the claimant has a combination of impairments and no singular impairment meets a particular Listing, but the findings related to the impairments are at least of equal medical significance to those of a Listing.  20 C.F.R. §§ 404.1526(b), 416.926(b).

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments).  The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B) (2004).  The ALJ must "consider the combined

effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

Plaintiff first argues that the ALJ failed to perform a proper listing analysis by failing to evaluate the objective medical evidence in determining whether Plaintiff met the requirements of Listing 12.04. [Entry #17 at 11–12]. He also asserts that he meets the requirements of Listing 12.09. *Id.* Because the ALJ found at step two that Plaintiff's alleged impairments of depression, anxiety, and alcohol and marijuana abuse were not severe impairments, she was not required to consider whether those alleged impairments equaled a Listing. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 581 (D.S.C. Mar. 17, 2010) (finding ALJ need not evaluate whether an impairment found to be nonsevere satisfies a particular listing). Even assuming the ALJ erred in finding Plaintiff's mental impairments to be nonsevere, the ALJ's decision provides substantial evidence to support the conclusion that these impairments did not meet a Listing.

Listing 12.04 provides that affective disorders, including depression, will be deemed severe when (A) there is medically-documented continuous or intermittent persistence of specified symptoms, and (B) the symptoms result in at least two of the following: "1. Marked restriction of activities of daily living; 2. Marked difficulties in maintaining social functioning; 3. Marked difficulties in maintaining concentration, persistence or pace; or 4. Repeated episodes of decompensation, each of extended duration," or (C) there is a medically-documented history of a chronic affective disorder of "at least 2 years' duration" that has caused more than a minimal limitation of ability to

do basic work activities that also satisfy specific additional criteria not at issue here. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, § 12.04. A claimant must satisfy the A requirements and either the B or C requirements. *Id.*

Listing 12.09 addresses substance addiction disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, § 12.09. Because Plaintiff alleges depressive syndrome related to substance addiction, he must satisfy the same requirements as those identified in Listing 12.04 to meet Listing 12.09. *Id.*

At step two, the ALJ found that Plaintiff did not satisfy the B requirements. Tr. at 14. She specifically found that Plaintiff had no limitations in activities of daily living ("ADLs"); no limitations in social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation of an extended duration. *Id.* Although the ALJ did not make a specific finding as to the C requirements, she did find that "[b]etween the claimant's alleged onset date, and date last insured, the claimant did not seek or receive treatment for mental impairments, and was not prescribed medication for depression or anxiety." Tr. at 16. The court concludes that the ALJ's finding forecloses any finding that Plaintiff satisfied the C requirements. For these reasons, the court finds that substantial evidence supports a conclusion that Plaintiff's mental impairments do not individually meet any Listing.

Plaintiff further argues that the ALJ erred by failing to properly consider whether the combined effects of Brown's impairments equaled a Listing. [Entry #17 at 13–14]. At step three, the ALJ made the following findings:

> [T]he undersigned has considered the combined effects of the claimant's impairments, both severe and non-severe, and has determined that the

17

> findings related to them are not at least equal in severity to those described in listings 12.04, 12.06, 12.09, 3.03, and 4.04. In this regard, the undersigned has specifically considered the cumulative effects of the impairments on the claimant's ability to work. *See* Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The undersigned notes that the claimant's alleged mental impairments, when combined with his alleged physical impairments, fail to diminish his overall level of functioning any more than when his impairments are considered individually.

Tr. at 15. The court finds that the ALJ's discussion of Plaintiff's combined impairments is sufficient under *Walker*. Furthermore, Plaintiff has offered no explanation of how more discussion of his combined impairments may have changed the outcome of this case or identified any additional restrictions that would flow from his combined impairments. For these reasons, the court finds the ALJ's listing analysis sufficiently addressed Plaintiff's combined impairments. *See Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner).

In his reply brief, Plaintiff also argues that the ALJ failed to properly consider his combined impairments in determining his RFC. When considering whether the ALJ properly considered the combined effect of impairments, however, the decision must be read as a whole. *See id.* (citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995)). Because the court has already determined that the ALJ sufficiently addressed Plaintiff's combined impairments in her listing analysis, the court finds that it was not error for the ALJ to omit that discussion in the RFC determination.

2.    The ALJ's Credibility Determination is Supported by
Substantial Evidence

Plaintiff argues that the ALJ performed an improper credibility analysis because she failed to consider the entire case record when she found Plaintiff not credible. [Entry #17 at 14–15]. The Commissioner argues the ALJ conducted a proper credibility analysis and that the court may not reweigh the evidence. [Entry #18 at 14–15].

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; SSR 96-7p; *Craig v. Chater*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

If an ALJ rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the bases for such rejection to ensure that the decision is sufficiently

supported by substantial evidence.  *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989).  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, ¶ 5.  In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process.  *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's medically-determinable impairments could reasonably be expected to cause some of the symptoms he alleged, but determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of his symptoms

was "not fully credible to the extent" the testimony was inconsistent with the ALJ's determination of his RFC.  Tr. at 16.

The ALJ then stated that Plaintiff readily admitted to a history of noncompliance with medications that could have improved his activity level and that this noncompliance suggests that Plaintiff's symptoms may not have been as limited as alleged.  *Id.*  The ALJ noted that besides an abnormal EKG in April 2009, Plaintiff had no other testing or diagnosis of a heart condition.  *Id.*  Although Plaintiff alleged suicidal ideation and severe depression, the ALJ found that those claims were not supported by the medical evidence of record.  *Id.*  Most notably, between Plaintiff's alleged onset date and his date last insured, Plaintiff did not seek or receive treatment for mental impairments and was not prescribed medication for depression or anxiety.  *Id.*  The ALJ also noted Plaintiff's history of marijuana abuse and considered Plaintiff's ADLs including driving, shopping, preparing meals, playing golf, and going to the Moose Club or VFW to socialize.  Tr. at 14, 16.

Plaintiff seems to argue that the ALJ erred because he did not directly address all of the factors set forth in SSR 96-7p.  [Entry #17 at 15].  The court is not persuaded by this argument.  The factors set forth in SSR 96-7p are potential factors for consideration and Plaintiff cites no case law suggesting that a credibility determination is improper unless the ALJ explicitly considers every factor.  Furthermore, the ALJ addressed the objective medical evidence and Plaintiff's ADLs, both factors under SSR 96-7p.  The evidence cited by the ALJ also directly addressed the treatment Plaintiff sought for his mental impairments, a factor listed in SSR 96-7p.  *See Mickles v. Shalala*, 29 F.3d 918,

921 (4th Cir. 1994) (finding failure to seek medical treatment may support a finding that claimant's impairments are not of disabling severity). Finally, the ALJ properly considered Plaintiff's noncompliance with his medications. *See Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1993) (considering the claimant's failure to follow treatment or take prescribed medications as a factor in assessing the claimant's credibility).

To the extent Plaintiff argues that additional evidence weighs against the ALJ's credibility finding, the argument is unavailing because it is not within the court's province to weigh conflicting evidence. *Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Blalock*, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

Because the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence, the court denies remand on this issue.

### 3. The ALJ Properly Evaluated the Opinion Evidence

In his final allegation of error, Plaintiff contends the ALJ failed to properly weigh the opinions of his social worker, Jean Cross.[5] [Entry #16 at 17]. The Commissioner

---

[5] Plaintiff also argued in his initial brief that the ALJ erred in failing to acknowledge Waccamaw Center for Mental Health as a treating source. [Entry #17 at 16–17]. The Commissioner correctly noted, however, that Plaintiff was not treated at Waccamaw Center until after the ALJ rendered her opinion. [Entry #18 at 16–17]. Thus, Plaintiff's argument on this point is without merit.

responds that Ms. Cross was not an acceptable medical source and her opinion cannot be given controlling weight. [Entry #18 at 16]. The Commissioner further argues that the ALJ properly evaluated Ms. Cross as an "other source" and reasonably concluded that her opinion was entitled to little weight. *Id.*

The Social Security Regulations distinguish between opinions from "acceptable medical sources" and "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06–03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical sources." Only acceptable medical sources can establish the existence of a medically-determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06–03p. However, medical sources who are not acceptable medical sources may provide opinions reflecting "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, and what the individual can still do despite the impairment(s), and physical or mental restrictions." SSR 06–03p. Social Security Ruling 06–03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision. . . .

*Id.*

Finally, the ALJs are instructed to apply the factors for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c), in evaluating the opinions from other sources with the understanding that not every factor may apply. *Id.* These factors include: (1) whether the physician has examined the claimant, (2) the treatment relationship between the physician and the claimant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, (5) whether the physician is a specialist, and (6) other factors that may support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Commissioner contends that Ms. Cross is not an acceptable medical source. Plaintiff does not dispute this assertion. [Entry #19 at 7]. Because Ms. Cross is not an acceptable medical source, she may not establish the existence of a medically-determinable impairment and the ALJ was obligated to analyze Ms. Cross's opinion as set forth above.

Plaintiff argues the ALJ erred in evaluating Ms. Cross's opinion. *Id.* A review of the ALJ's decision, however, reveals the ALJ explained the weight given to the opinion as she "generally should," but is not required to do. SSR 06–03p. In considering Ms. Cross's opinion, the ALJ gave it little weight because she did not treat claimant until after his date last insured and the symptoms noted in her records were largely self-reported by Plaintiff. Tr. at 17. The ALJ also found that Ms. Cross was not an acceptable medical source worthy of deference in this situation. *Id.* In accordance with SSR 06–03p, the ALJ's analysis addressed some of the factors used to evaluate medical source opinions

including whether the nature of the treatment relationship and the supportability of the noted symptoms.

Because the ALJ evaluated Ms. Cross's opinion in accordance with the regulations and offered sound reasons for discounting the opinion, the undersigned finds the ALJ's decision to give little weight to the opinion was supported by substantial evidence.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether his decision is supported as a matter of fact and law.  Based on the foregoing, the undersigned affirms the Commissioner's decision.

IT IS SO ORDERED.

April 12, 2013                                    Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge